UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ERICA IRENE YEATMAN,

                Plaintiff,

  v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

                Defendant.

Case No. 3:10-cv-05443-KLS

ORDER REVERSING DEFENDANT'S DECISION TO DENY BENEFITS AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS

Plaintiff has brought this matter for judicial review of defendant's denial of her application for supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On January 22, 2007, plaintiff filed an application for SSI benefits, alleging disability as of September 1, 2006, due to a mild obsessive compulsive disorder, an amnesia disorder and depression. See Tr. 11, 87, 124. Her application was denied upon initial administrative review and on reconsideration. See Tr. 11, 53, 58. A hearing was held before an administrative law

ORDER - 1

judge ("ALJ") on September 23, 2009, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See Tr. 21-50.

On October 30, 2009, the ALJ issued a decision in which plaintiff was determined to be not disabled. See Tr. 11-20.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on May 14, 2010, making the ALJ's decision defendant's final decision. See Tr. 1; see also 20 C.F.R. § 416.1481.  On June 25, 2010, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1.  The administrative record was filed with the Court on September 8, 2010. See ECF #10.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an award of benefits, because the ALJ erred in evaluating the medical evidence in the record and in assessing plaintiff's credibility.  The Court agrees that the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, finds that while defendant's decision should be reversed, this matter should be remanded to defendant for further administrative proceedings.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one rational

ORDER - 2

interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.   The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in

ORDER - 3

the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A. Dr. Schneider

In his decision, the ALJ found in relevant part as follows:

Robert Schneider, Ph.D., performed a psychological evaluation in 2008. (Ex. 9F).  According to Dr. Schneider, the claimant's MMPI-2 personality test score was invalid, as she scored to high on the exaggeration scale. (Ex. 9F, p. 5).  He noted the claimant's "victim identity," adding that she "has a very significant disability identity, is highly focused on symptoms, and views herself as being extremely disabled." (Ex. 9F, p. 5).  Dr. Schneider diagnosed the claimant with a [global assessment of functioning] GAF [score] of 45.[1]

---

[1] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007).  It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007).  "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." Pisciotta, 500 F.3d at 1076 n.1

ORDER - 4

> He also opined that it was unlikely that the claimant "would ever be able to sustain gainful employment." (Ex. 9F, p. 5-6).  Under the Social Security Regulations, this conclusion about employability is on an issue specifically reserved for the Commissioner. . . .  As such, the undersigned does not give this aspect of that opinion any weight, because it is not consistent with the claimant's self-reported activities and abilities.  However, Dr. Schneider did state that the claimant could follow simple, basic instructions. (Ex. 9F, p. 6).  This finding matches the claimant's residual functional capacity and is given some weight, as it is consistent with [examining psychologist] Dr. [Leslie] Postovoit's Mental Residual Functional Capacity analysis. (Ex. 5F).

Tr. 18.  Plaintiff argues the ALJ ignored a significant portion of Dr. Schneider's report, in which Dr. Schneider opined that it was "unlikely" that she could maintain a competitive pace or tolerate the typical pressures or interpersonal demands of employment. Tr. 233.  The Court agrees.

Defendant argues it is proper for an ALJ to discredit a physician's opinion on the basis that it is not supported by objective medical evidence.  While true, the ALJ did not reject the specific functional limitations assessed by Dr. Schneider.  Indeed, he did not even mention them in his decision. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (error to affirm ALJ's credibility decision based on evidence ALJ did not discuss).  Defendant further argues that while the ALJ gave weight to Dr. Schneider's opinion that plaintiff was able to follow simple and basic instructions, he did not give any weight "to the remainder of Dr. Schneider's opinion regarding Plaintiff's employability because this was an issue reserved to" defendant. ECF #13, p. 6.  But the ALJ only rejected Dr. Schneider's statement that it was very unlikely that she "would ever be able to maintain gainful employment" on this basis, and not on the actual limitations assessed by Dr. Schneider. See Tr. 18, 232.  With respect to plaintiff's ability to function, Dr. Schneider as an examining psychologist is qualified to offer an opinion thereon.

Defendant's assertion that the ALJ properly found Dr. Schneider's functional assessment

---

(quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 34); see also Cox v. Astrue, 495 F.3d 614, 620 n.5 (8th Cir. 2007).
ORDER - 5

to be inconsistent with plaintiff's self-reported activities and abilities is equally without merit, as again it is clear from a plain reading of the ALJ's decision, that the ALJ merely was rejecting the aspect of Dr. Schneider's opinion that specifically concerned plaintiff's "employability" for these reasons. See Tr. 18. The same is true in regard to the GAF score assessed by Dr. Schneider. The fact that an examining medical source's opinion may "reflect" to some extent the claimant's own self-reports is irrelevant here, furthermore, as once more the ALJ did not reject the assessment of plaintiff's functional capabilities on this basis. As such, the ALJ erred.

B.     Dr. Meharg

Plaintiff also challenges the ALJ's following findings:

> Stephen Meharg, Ph.D., who performed a consultative psychological exam for state disability services, gave the claimant a GAF of 48, indicating serious symptoms or serious impairment in social, occupational, or school functioning. (Ex. 3F). Dr. Meharg noted during this examination that the claimant was "remarkably vague" in describing her symptoms, and he found the claimant had a "fairly obvious tendency toward symptom overendorsement." (Ex. 3F, p. 7). The claimant had a "completely normal" memory test, and though Dr. Meharg tested her for a lack of effort, this analysis was inconclusive. (Ex. 3F, p. 6). As his consultative exam focused on memory issues, Dr. Meharg did not address the claimant's ability to work.

Tr. 18. Specifically, plaintiff argues that although the ALJ acknowledged the GAF score of 48, he failed to state any reasons for rejecting it. Again, the Court agrees.

First, it should be noted that contrary to what is implied by the ALJ's findings here, Dr. Meharg did not actually find plaintiff's vagueness and tendency to over endorse symptoms was necessarily due to reasons other than her mental impairments. In fact, the part of the evaluation report discussing this issue tends toward the opposite conclusion:

> Overall, the data with respect to motivation is essentially inconclusive. Her performance on [psychological testing] tends to indicate adequate effort on this memory task, and her normal performance across virtually all subtests of the Wechsler Memory Scale also indicates no overt attempt at symptom exaggeration. In contrast, Ms. Yeatman's somewhat dramatic and evasive

ORDER - 6

>presentation during the interview combined with a fairly obvious tendency toward symptom overendorsement on the [additional psychological testing] indicates, at a minimum, an anxious plea for help and a strong preoccupation with mood and cognitive symptoms even if these tend not to be supported by more objective analysis.  In most such cases, the patient's complaints of cognitive disturbance can most likely be attributed to a psychiatric pseudodementia.  Unfortunately, the somewhat diffuse pattern of her symptoms defies easy diagnostic categorization. . . .

Tr. 187.  The ALJ also is incorrect in stating that Dr. Meharg did not address plaintiff's ability to work, since, as noted above, a GAF score is representative, albeit subjectively, of the claimant's "overall level of functioning," is "relevant evidence" of the claimant's mental functional abilities and, when it falls with the range of 41 to 50, indicates serious symptoms or serious impairment in social, occupational or school functioning.  Pisciotta, 500 F.3d at 1076 n.1; England, 490 F.3d at 1023, n.8.; Cox, 495 F.3d at 620 n.5.  Therefore, at least to this extent, Dr. Meharg did address functional limitations in regard to plaintiff's ability to work.  Whether the ALJ ultimately would be required to accept the above GAF score remains to be seen.

Defendant argues the ALJ choose to adopt the opinion the functional assessment given by Dr. Postovoit over the conflicting assessment provided by Dr. Meharg.  In his decision, however, the ALJ merely stated that the ability to follow simple, basic instructions found by Dr. Schneider was consistent with Dr. Postovoit's functional assessment.  See Tr. 18.  But just discussed, given that the ALJ did not appear to consider the functional limitations indicated by the low GAF score assessed by Dr. Meharg, it is not at all clear that the ALJ actually compared the assessment of Dr. MeHarg with that of Dr. Postovoit.  Nor, in light of the many moderate mental functional limitations assessed by Dr. Postovoit discussed below, is it clear that a GAF score of 48 would be inconsistent therewith.

C.   Dr. Postovoit

As discussed above, the ALJ found Dr. Postovoit's functional assessment to be consistent

ORDER - 7

with a limitation to unskilled work involving the performance of routine, repetitive tasks. See Tr.

18. As pointed out by plaintiff, however, Dr. Postovoit found plaintiff had additional moderate

limitations in his ability to:

- work in coordination with or proximity to others;
- complete a normal workday and workweek;
- perform at a consistent pace;
- accept instructions and respond appropriately to criticism from supervisors;
- get along with coworkers or peers; and
- respond appropriately to changes in the work setting.

Tr. 203-04. In addition, Dr. Postovoit opined that plaintiff would "have difficulty working" with

maintaining attention and concentration "for extended periods if the work is more detailed or has

high production values," would "work better" with smaller groups and would "perform best" in

settings that had "reliable work expectations and schedules." Tr. 205. Clearly, these limitations

are not encompassed by the ALJ's residual functional capacity assessment. Accordingly, here

too the ALJ erred. The Court, however, does agree with defendant that there is no evidentiary

support in the record for the claim that a moderate limitation in the ability to complete a normal

workday and workweek and perform at a consistent pace, establish plaintiff would miss at least

two days of work per month and thus could not sustain competitive employment.

II.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at

642. The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580.

In addition, the Court may not reverse a credibility determination where that determination is

based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for

discrediting a claimant's testimony should properly be discounted does not render the ALJ's

ORDER - 8

determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

In this case, the ALJ discounted plaintiff's credibility on the basis of her daily activities, noting specifically in relevant part that:

> . . . [T]he claimant testified that she takes care of her three children, which includes preparing their meals and driving them to school. She testified that she cleans the house, shops, and can handle her finances. . . . (Ex. 3E).
>
> The claimant's then-husband . . . noted that the claimant feeds the children, takes them to school, and cleans. . . . .
>
> . . .
>
> . . . the claimant's ability to take care of three young children shows a significant level of functioning.

ORDER - 9

Tr. 16-17. To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. Smolen, 80 F.3d at 1284. Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7. The claimant need not be "utterly incapacitated" to be eligible for disability benefits, however, and "many home activities may not be easily transferable to a work environment." Id.

Plaintiff argues the ALJ failed to make any determination that the activities she engaged in actually were performed for a substantial part of her day or were easily transferrable to a work environment. The ALJ need not recite "magic words" in his decision, though, because "it serves no purpose to require every step of each decisional process to be enunciated with precise words and phrases drawn from relevant disability regulations." Magallanes, 881 F.2d at 755; see also Renner v. Heckler, 786 F.2d 1421, 1424 (9th Cir. 1986). In addition, as noted above, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes, 881 F.2d at 755. The record in this case, furthermore, supports the ALJ here. For example, plaintiff described her typical day as follows when she saw Dr. Meharg:

> [She] arises at approximately 7:30 a.m, each morning at which time she helps her son prepare to go to kindergarten. She will then feed and bathe her other children and get them ready for preschool and Headstart. She performs housecleaning until her children return home in the afternoon. She will then prepare dinner. . . . [S]he spends most of the evening watching television and helping her children prepare for bed. She is responsible for most meal preparation in the home. . . . She . . . is able to drive herself when needed. Shopping responsibilities are shared with her spouse. . . .

Tr. 185. This largely shows plaintiff is able to spend a substantial part of her – if not the whole – day performing household tasks. See also Tr. 106-09, 114-18, 230.

The ALJ next discounted plaintiff's credibility in part for the following reasons:

Overall, the claimant's statements about her activities of daily living do not

ORDER - 10

> make sense in light of her other statements. For example, the claimant stated that she rarely leaves her house. Yet she testified that in 2008 and 2009 she drove to the Olympia area every month to visit her current boyfriend in prison. Moreover, . . . the claimant's statements are inconsistent with the her ex-husband's report that she leaves the house daily. . . .
>
> The medical record indicates that [the] claimant overstates the symptoms of her mental impairments. For example, she has testified that she cuts herself as a way of relieving stress, a claim she also stated to her therapists. (Ex. 11F, p. 15; 9F, p. 2). Yet no physician has reported any physical signs of cutting.
>
> . . .
>
> . . . The claimant has also indicated that drugs and alcohol have "never" been a problem for her. (Ex. 9F, p. 3). Yet she reported that she previously used methamphetamine for a year, and thought she had overdosed on drugs once in high school. (Ex. 1F, p. 9).

Tr. 17. These are valid reasons for discounting a claimant's credibility, which plaintiff has not specifically challenged. See Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998) (determination that claimant's complaints are inconsistent with clinical observations can satisfy clear and convincing requirement); Smolen, 80 F.3d at 1284 (ALJ may consider prior inconsistent statements concerning symptoms and other testimony that appears less than candid).

Lastly, the ALJ discounted plaintiff's credibility in part because:

> The claimant's history of failing to appear for appointments with mental health providers suggests that she has less interest in managing her symptoms than she claims. (Ex. 10F, p. 4 and 20; 7F, p. 8-13). At one point, Lower Columbia Mental Heath discontinued treatment for this reason, though it resumed later. (Ex. 10F, p. 4 and 11). The claimant blames missed appointments on a bad memory, and she states that she will forget to write down an appointment even after receiving a reminder phone call. (Ex. 10F, p. 14). She has also blamed a busy lifestyle of raising three children for this problem. The claimant's primary care physician, Gerardo Melgar, M.D., stated that the claimant is "not being compliant with her mental health wellness." (Ex. 10F, p. 6). Regarding her physical concerns, the claimant has refused to follow recommendations to diet, to see a dietitian, or take other steps that would reduce her weight. (Ex. 10F, p. 11, 14, 20). . . .
>
> The claimant's use of medications also raises questions about her credibility. The medical evidence shows that she tends to stop taking her medications and

ORDER - 11

>   attending mental health therapy once she starts to feel better. (Ex. 10F, p. 20;
>   11F, p. 15).  At the hearing, the claimant stated that she takes these
>   medications (Zyprexa and Lithium) three or four times a week, although she
>   knows the prescriptions are for daily use. . . .

Tr. 17.  Failure to assert a good reason for not seeking, or following a prescribed course of, treatment, or a finding that a proffered reason is not believable, "can cast doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); see also Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ in discounting claimant's credibility in part due to lack of consistent treatment, noting that fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain).

Plaintiff argues she cannot be denied disability benefits, unless the evidence in the record shows the prescribed treatment she failed to comply with, clearly would have restored her ability to engage in substantial gainful activity. See Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995) (benefits may not be denied due to failure to obtain treatment because of inability to afford it); see also Byrnes v. Shalala, 60 F.3d 639, 641 (9th Cir. 1995).  Here, however, the ALJ did not deny plaintiff disability benefits because of treatment non-compliance, but rather discounted her credibility in part on that basis, which, as discussed above, is proper.  Accordingly, for all of the above reasons, the ALJ did not err in discounting plaintiff's credibility.

III.     This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is

ORDER - 12

unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues remain with respect to the medical evidence in the record concerning the medical evidence in the record regarding plaintiff's mental impairments and limitations, it is not entirely clear whether the assessment of plaintiff's residual functional capacity provided by the ALJ or the ALJ's determination that plaintiff is capable of performing other jobs existing in significant numbers in the national economy at step five of the sequential disability evaluation process is supported by substantial evidence. It thus also is unclear whether the ALJ properly found her to be not disabled, and accordingly this matter should be remanded to defendant to conduct further administrative proceedings.[2]

---

[2] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found to be disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. Id. If at step three of the evaluation process, a disability determination "cannot be made on the basis of medical factors alone," the ALJ then must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the

ORDER - 13

It is true that where the ALJ has failed "to provide adequate reasons for rejecting the opinion of a treating or examining physician," that opinion generally is credited "as a matter of law." Lester, 81 F.3d at 834 (citation omitted). However, where the ALJ is not required to find the claimant disabled on crediting of evidence, this constitutes an outstanding issue that must be resolved, and thus the Smolen test will not be found to have been met. See Bunnell v. Barnhart, 336 F.3d 1112, 1116 (9th Cir. 2003). Further, "[i]n cases where the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence," the Ninth Circuit "consistently [has] remanded for further proceedings rather than payment of benefits." Bunnell, 336 F.3d at 1116. In this case, given the ALJ's proper credibility determination and the

---

claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.
    In this case, as discussed above, the ALJ limited plaintiff to performing unskilled work that involves the performance of routine, repetitive tasks with little public contact. See Tr. 15. Also as discussed above, though, the medical opinion source evidence in the record that the ALJ erred in evaluating, indicates the presence of greater mental functional limitations than those noted by the ALJ here. In addition, if a claimant cannot perform his or her past relevant work at step four of the sequential disability evaluation process, at step five the ALJ must show there are a significant number of jobs in the national economy that the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), § 416.920(d), (e). The ALJ can do this either through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).
    An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).
    In this case, the ALJ posed a hypothetical question to the vocational expert at the hearing which contained substantially the same functional limitations as were included in the ALJ's RFC assessment. See Tr. 47. In response to that hypothetical question, the vocational expert testified that an individual with those limitations – and with the same age, education and work background as plaintiff – would be able to perform other jobs. See Tr. 47-48. Based on the vocational expert's testimony, the ALJ found at step five that plaintiff was capable of performing other jobs existing in significant numbers in the national economy. See Tr. 19-20. However, because the ALJ erred in his evaluation of the medical evidence in the record as discussed above, and because, also as discussed above, it is not clear whether the ALJ's residual functional capacity assessment is entirely accurate, it also is unclear whether the hypothetical question the ALJ posed to the vocational expert was accurate as well. Accordingly, remand for further consideration of plaintiff's RFC and her ability to perform other jobs existing in significant numbers in the national economy is warranted.

ORDER - 14

fact that it is not entirely clear the ALJ would be required to find plaintiff disabled on the basis of the improperly discredited medical evidence, the Court declines to apply the credit as true rule, and instead finds remand for reconsideration thereof is more appropriate.

## CONCLUSION

Based on the foregoing discussion, the Court finds defendant improperly concluded plaintiff was not disabled, and therefore hereby reverses the ALJ's decision and remands this matter to defendant for further administrative proceedings in accordance with the findings contained herein.

DATED this 28th day of March, 2011.

/s/ Karen L. Strombom
Karen L. Strombom
United States Magistrate Judge